16176.   COKER *et al. v.* SHELTON MILLS.

16177.   WALTERS *et al. v.* SHELTON MILLS.

An offer to sell goods may be so indefinite and so lacking in mutuality as not to be capable of enforcement, yet where, under the agreement to sell, goods are ordered and the order is accepted and the goods are shipped and received, liability may not be escaped upon the ground that the contract was lacking in mutuality.

DECIDED JUNE 9, 1925.

Complaint; from Muscogee superior court—Judge Munro. December 31, 1924.

*McCutchen, Bowden & Gaggstatter,* for plaintiffs in error.

*Foley & Chappell, Brock, Sparks & Russell,* contra.

LUKE, J.   Both these cases arise by reason of a suit to recover for an indebtedness alleged to have arisen by reason of a certain agreement and bond, such agreement and bond being as follows: "This writing between Shelton Mills, of Chattanooga, Tennessee, of the first part, and J. B. Walters, of Cordele, Georgia, of the second part, witnesses as follows: Said Shelton Mills is to, from time to time, ship to said J. B. Walters, at Cordele, Georgia, such amounts of flour and mill products as may be mutually agreed upon, said flour and mill products to be received by said Walters as the property of said Shelton Mills, and stored in a warehouse for said mills, at the expense of said Walters, and there held on consignment, without expense to said Shelton Mills, until sold. Said J. B. Walters is to sell said flour and mill products for said Shelton Mills at such prices as he may think proper, but in no case less than the prices which shall be fixed and specified from time to time by said Shelton Mills. Said flour and mill products shall remain the property of said Shelton Mills until sold, and shall be sold only for cash, and the proceeds of sale shall be the property of said mills to the extent of said prices from time to time fixed by said mills. Any amount received from the sales of any particular flour or other mill products in excess of the price

fixed thereon by said Shelton Mills shall be retained by said Walters as his entire compensation for storing, insuring and selling the same. At the end of each week during the continuance of this contract said Walters shall make to said Shelton Mills an itemized statement of all sales made during the week, and shall remit to said mills with said statement all proceeds of sales retained as compensation, etc., being the amount in excess of the prices fixed upon said flour and mill products by said Shelton Mills as aforesaid. Said flour and mill products, as soon as received and placed in the warehouse to be furnished by said Walters, shall be insured by said Walters for and in the name of said Shelton Mills, and the policy, or policies, of insurance shall be promptly sent by said Walters to said Shelton Mills. It is also understood that said J. B. Walters may, from time to time, as agent for said Shelton Mills, make sales of flour and other mill products to other dealers, and shall send in the orders from such dealers direct to said mills, the shipments to be made by said mills direct to purchasers, and the proceeds of such flour and mill products sold other dealers through the agency of said Walters shall be quoted from time to time in advance by said mills to said Walters, and upon collection of amounts by said mills due for products sold to other dealers through the agency of said Walters, said mills shall remit to said Walters, as his commission, such amount as may be collected and received for said products in excess of the prices quoted thereon by said mills to said Walters."
"Know all men by these presents: That we, J. B. Walters as principal, and F. M. Coker and J. N. King, as sureties, are hereby firmly held and bound to Shelton Mills in the sum of two thousand ($2,000.00) dollars; but this bond shall be void in the event said J. B. Walters shall faithfully account for and remit to said Shelton Mills all moneys derived from the proceeds of sales of flour and other mill products and going to said Shelton Mills under the terms of the foregoing and attached contract between said Shelton Mills and said Walters, under which flour and other mill products are to be consigned by said Shelton Mills to said Walters and sold, and proceeds accounted for as provided in said contract."
. The petition alleged: that pursuant to the foregoing agreement and bond Shelton Mills shipped flour to Walters to the amount of $1,813.20; that the flour was shipped upon the order of Walters

and accepted by him, and that he failed, as provided in the contract, to account for or pay for the same; and that neither Walters nor his bondsmen would account for the flour so shipped. General and special demurrers to the petition were urged, upon the ground that the agreement between Shelton Mills and J. B. Walters was lacking in mutuality, without consideration, void, unenforceable, and unilateral, and that for these reasons the bond referred to in the petition is unenforceable. The sole exception to be considered is to the judgment overruling the demurrers of the defendants. "It is well settled that a promise, although a nudum pactum when made, because the promisee is not bound, may become binding when he subsequently furnishes the consideration by doing that which he was expected to do." *Peeples* v. *Citizens &c. Insurance Co.,* 11 *Ga. App.* 177 (74 S. E. 1034), and cases cited. Even though the contract sued upon in this case be lacking in mutuality, it is pleaded that the plaintiff supplied the consideration and the obligee accepted the consideration. Though it be conceded that the agreement was lacking in mutuality and was in the beginning a naked promise, yet when under its terms the obligee ordered the goods referred to in the agreement and the obligor complied by a shipment, the contract become binding and enforceable. The promisor did that which he promised to do and he performed his part of the contract upon the order of the promisee. It is not necessary that each promise should be absolute, so that either party could enforce it against the other; for a promise conditional on the doing of some act may be rendered binding by the act, while it may give no right to compel the doing of it. Story on Contracts, § 569. Neither in good conscience nor in law can the obligees herein sued escape liability when the obligor has complied with his promise.

*Judgment affirmed in both cases. Broyles, C. J., and Bloodworth, J., concur.*